IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation, | )<br>)<br>)<br>) |
| Plaintiff, | ) 11 C 5165 |
| v. | )<br>) Judge Virginia M. Kendall |
| JENBACHER LTD., a Delaware corporation, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union"), as subrogee to its insured Biogas Energy Solutions LLC ("Biogas"), brought a diversity action against Defendant Jenbacher Ltd. ("Jenbacher"), a Delaware corporation. Jenbacher performed maintenance duties at Biogas' facility, which suffered a fire that National Union alleges was caused by Jenbacher's breach of contract (Count I) and gross negligence (Count II). Jenbacher moves to dismiss the action for failure to state a claim upon which relief can be granted, due to the subrogation waiver contained in the maintenance agreement executed by Biogas and Jenbacher.[1] For the following reasons, the Court grants Jenbacher's motion.

**I. BACKGROUND**

Biogas owns a facility in Dolton, Illinois, that captured methane gas from an adjacent landfill

---

[1] The Court granted National Union leave to file a Sur-Response (Doc. 22) and Jenbacher leave to file a Sur-Reply in Opposition to the Sur-Response (Doc. 25) and took them under advisement. Both seemed like an attempt to have the last word and neither proved necessary or helpful to the Court in reaching its decision.

to generate electricity that was then sold to the local utility company. (¶6). On June 16, 2003, Biogas entered into an operating and maintenance agreement with Jenbacher ("O&M Agreement") whereby Jenbacher assumed operation and maintenance duties for the electrical generator equipment. (Ex. A). In the O&M Agreement, incorporated by reference in the Complaint, Jenbacher agreed to operate the equipment in a proper manner so as to avoid harm to Biogas' property, and take reasonable actions to prevent damage. (Ex. A, ¶¶2.14-2.17). The O&M Agreement contains an express waiver of subrogation, which states:

> 12.7 [Biogas] shall cause their insurance underwriter to waive its rights of subrogation against [Jenbacher] and its Affiliates, employees, officers and directors, and [Biogas] shall provide certificates of insurance to [Jenbacher] evidencing such waiver.

(Ex. A, ¶12.7). National Union alleges that Jenbacher drastically cut back its maintenance at Biogas' facility, intentionally and willfully, to reduce costs. (¶8). Jenbacher instructed its employees to intentionally disregard maintenance duties of the equipment. (¶8). Jenbacher personnel intentionally and willfully disabled safety equipment, including methane and heat detection systems designed to prevent property damage and personal injury, to avoid returning to the facility every time a system was activated. (¶9). There were constant breakdowns, numerous oil and glycol leaks and fires caused by those leaks. (¶10). Biogas repeatedly warned Jenbacher of these hazardous conditions and requested proper maintenance, but Jenbacher personnel continued to disable safety equipment. (¶11).

On September 18, 2009, a fire erupted at the facility, engulfing the entire structure and resulting in significant property damage and loss of business. (¶12). National Union reimbursed Biogas for its loss pursuant to its insurance policy. (¶¶17, 22). On July 29, 2011, National Union,

as subrogee of Biogas, filed a complaint against Jenbacher for breach of contract and gross negligence. Jenbacher moves to dismiss the action, for failure to state a claim upon which relief can be granted, due to the express subrogation waiver in the O&M Agreement.

**II. STANDARD**

When considering a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true ... 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To determine whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the factual allegations are well-pleaded, the Court assumes their veracity and then turns to determine whether they plausibly give rise to an entitlement to relief. *See Id*. A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* at 678. Furthermore, "*Twombly* teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009).

**III. DISCUSSION**

As a threshold matter, the Court finds that its subject matter jurisdiction has been properly

invoked, as National Union is a Pennsylvania corporation, Jenbacher is a Delaware corporation, and the damages alleged exceed $ 75,000. *See* U.S. Const. art. III, § 2; 28 U.S.C. §§ 1332(a)(1), (c)(1). Venue is proper because the acts or omissions occurred in Dolton, Illinois. 28 U.S.C. § 1391(a). The choice of law is that of the State of New York, which neither party disputes.[2]

New York law recognizes subrogation, which is an equitable doctrine that allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss that the insurer is bound to reimburse. See, e.g., *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 84 (2nd Cir. 2005) (citing *Kaf-Kaf, Inc. v. Rodless Decorations, Inc.*, 90 N.Y.2d 654, 687 (N.Y. 1997)); *Loctite VSI Inc. v. Chemfab N.Y. Inc.*, 701 N.Y.S.2d 723, 724 (App. Div. 2000). Contracting parties may freely waive their respective insurers' rights of subrogation. *Id.* "It is well-established that waiver of subrogation clauses are enforceable in New York." *St. Paul Fire & Marine Ins. Co. v. Tag 380, LLC*, 2007 U.S. Dist. LEXIS 74112 (S.D.N.Y. Sept. 27, 2007) (citing *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 317 F. Supp. 2d 336, 340 (S.D.N.Y. 2004) (citing *Bd. of Educ. v. Valden*, 46 N.Y.2d 653 (1979)).

Jenbacher argues that the O&M Agreement's express waiver of subrogation is enforceable and bars National Union from filing suit for damages occasioned by the fire at Biogas' facility. National Union does not dispute that Biogas procured property insurance from National Union for its facility, that the fire was an insured claim for which Biogas was compensated, and that the waiver of subrogation in the O&M Agreement is valid. Rather, National Union argues the waiver does not preclude its allegations of gross negligence, and breach of contract based upon specific intentional

---

[2] The O&M Agreement contains an express choice of law provision, that its terms "shall be construed and enforced in accordance with and governed by the internal laws of the State of New York applicable to contracts made and to be performed entirely within such state, without regard to conflicts of law principles." (Ex. A, ¶13.3).

4

or willful misconduct, because New York law prohibits enforcement of an exculpatory provision when the defendant's conduct is intentional.

### A. Gross Negligence

Under New York state law, parties are free to enter into contractual agreements that absolve a party from its own negligence, though such agreements are "disfavored by the law and closely scrutinized by the courts." *Lago v. Krollage*, 78 N.Y.2d 95, 99 (N.Y. 1991). However, contractual agreements that exempt a party from liability for its own gross negligence offend the public interest. *Id.* at 100. So-called "exculpatory clauses" deprive an injured party of the right to recover damages due to willful or grossly negligent acts, and are therefore void. *Id.*; *see Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 2012 N.Y. LEXIS 504, at *4 (N.Y. Mar. 22, 2012). To pierce a contractual limitation of liability, the grossly negligent conduct must "evince a reckless disregard for the rights of others" or "must 'smack[] of intentional wrongdoing.'" *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 554 (N.Y. 1992) (citing *Kalisch-Jarcho, Inc. v. New York*, 58 N.Y.2d 377 (N.Y. 1983)); *accord Abacus Fed. Sav. Bank*, 2012 N.Y. LEXIS 504 at *4.

Jenbacher argues that a waiver of subrogation is, in effect, an exculpatory clause and the parties dispute which line of federal court cases interpreting New York state law should guide this Court. *Compare St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 84 (2nd Cir. 2005)(waiver of subrogation clause bars a claim of gross negligence under New York law) with *Am. Motorist Ins. Co. v. Morris Goldman Real Estate Corp.*, 277 F. Supp. 2d 304, 309 (S.D.N.Y. 2003)(waiver of subrogation does not bar a claim of gross negligence under New York law). Fortuitously, the highest court in the State of New York recently addressed a similar case, which provides authoritative precedent for this Court. *See Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*,

2012 N.Y. LEXIS 504, *4 (N.Y. Mar. 22, 2012); *see also Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004)("A decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law."). Abacus Bank was burglarized without the alarm system alerting the police. *Id.* at *2. Abacus Bank brought suit against its two alarm system companies, Diebold and ADT, alleging that they knew for months that their systems were malfunctioning, yet failed to investigate the equipment and notify Abacus Bank of the potential security breach. *Id.* at *8-9. Abacus Bank's maintenance agreements with Diebold and ADT both contained exculpatory clauses to shield the defendants from their own negligence and limit their liability to $250. *Id.* at *4. Yet the New York Court of Appeals concluded that Abacus Bank's Complaint sufficiently alleged gross negligence to pierce the exculpatory clauses contained in both Diebold and ADT's maintenance agreements. *Id.*

However, the Court also noted that Diebold's contract with Abacus Bank included a clause that Abacus Bank "shall look solely to its insurer for recovery of its losses and hereby waives any and all claims for such loss against Diebold." *Id.* at *4. This type of indemnification agreement, the Court explained, simply shifts an injured party's source of compensation-without restricting the injured party's ability to recover. *Id.* at *10 (citing *Austro v. Niagara Mohawk Power Corp.*, 66 N.Y.2d 674, 676 (1985)). Distinguishable from exculpatory clauses, such indemnification agreements "in effect simply require one of the parties to the contract to provide insurance for all of the parties" and are valid. *Id.* at *10 (citing *Bd. of Educ. v. Valden*, 46 N.Y.2d 653, 657 (1979)). The Court found it to be a valid indemnification agreement, called it a waiver of subrogation clause, and affirmed the dismissal of Abacus's breach of contract claim against Diebold for gross negligence. *Id.* at *9. In contrast, ADT's contract with Abacus Bank did not contain a waiver of

subrogation clause; therefore, Abacus Bank's allegations of gross negligence could pierce the exculpatory clause and the Court reinstated the breach of contract claim against ADT. *Id.* at *10.

In this case, National Union alleges that Jenbacher was grossly negligent when it failed to properly maintain the engines and related equipment at the Biogas facility, and disabled methane detectors or heat detection equipment or both. These allegations, presumed to be true for the purpose of a Rule 12(b)(6) motion, evince a reckless disregard for the rights of Biogas employees, much like the allegations made by Abacus Bank. Yet the O & M Agreement contains an express waiver of subrogation clause: "[Biogas] shall cause their insurance underwriter to waive its rights of subrogation against [Jenbacher] and its Affiliates, employees, officers and directors." Applying the recent holding of *Abacus Federal Savings Bank*, and contrary to National Union's assertion, the waiver of subrogation clause bars National Union's claim of gross negligence against Jenbacher. *See Id.* at *9 ("Diebold argues that the waiver-of-subrogation clause in its contract with Abacus acts as a total defense to the claims asserted by Abacus in its complaint. We agree."); *see also Great Am. Ins. Co. of N.Y. v Simplexgrinnell LP*, 874 N.Y.S.2d 465 (N.Y. App. Div. 2009)("We discern no public policy basis for limiting freedom of contract so as to preclude parties from agreeing that a waiver of subrogation bars not only claims of negligence but also claims of gross negligence."). Consequently, National Union has failed to state a claim upon which relief can be granted. Count II is dismissed.

**B. Breach of Contract**

To support its argument that the waiver of subrogation should bar National Union's claim for willful breach of contract, National Union points to caselaw that states indemnification agreements "are not contrary to public policy unless they purport to indemnify a party for damages

7

flowing from an injury that was intentional." *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 84 (2nd Cir. 2005). In its Complaint, National Union alleges that Jenbacher instructed its employees to intentionally disregard maintenance duties of the equipment. By disabling safety equipment designed to prevent property damage and personal injury, Jenbacher personnel could avoid returning to the facility whenever a system was activated and reduce its maintenance costs. Whereas in *Abacus Federal Savings Bank*, Abacus Bank alleged that Diebold and ADT failed to notify Abacus Bank of potential security breaches at the bank, here National Union alleges that Biogas repeatedly warned Jenbacher of these hazardous conditions and requested proper maintenance, but Jenbacher continued to disable safety equipment. Yet the Complaint does not allege conduct with intent to injure–that is, it does not allege Jenbacher's intent to cause physical harm and property damage to Biogas' facility occasioned by fire. Therefore, it is not contrary to public policy. *See St. Paul Fire & Marine Ins. Co.*, 409 F.3d at 84.

National Union argues that its claim that Jenbacher "willfully and intentionally breached . . . contractual duties" is distinct from a claim of gross negligence. National Union points to district court caselaw providing definitions that while gross negligence is "a failure to exercise even that care which a careless person would use," in contrast, "willful, wanton, and reckless" conduct "requires 'that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences.'" *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 464 (S.D.N.Y. 2010)(citing Prosser & Keeton on Torts § 34 at 211-213 (5th ed. 1984) (quoting Restatement (Second) of Torts § 282)). National Union argues that Jenbacher fails to cite a single case in which

8

a New York court held that a breach of contract claim predicated upon willful or intentional conduct was precluded by a waiver of subrogation, and therefore its claim should proceed. Indeed, the claim does not appear in New York common law. The question before the Court, then, is whether New York state law would recognize a willful and wanton claim as distinct from and sufficiently more offensive to public policy than gross negligence such that it could not be barred by a waiver of subrogation. A federal court considering a state law claim under its diversity jurisdiction must "predict what the state's highest court would do if presented with the identical issue." *Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004).

The Court predicts the New York Court of Appeals would not create a novel cause of action, because in similar cases examining limitations of liability in commercial contract disputes, New York courts have used the terms willful and gross negligence interchangeably. *See Kalisch-Jarcho, Inc. v. New York*, 58 N.Y.2d 377 (N.Y. 1983)("[A]n exculpatory agreement, no matter how flat and unqualified its terms, [under] announced public policy, it will not apply to exemption of willful or grossly negligent acts.")(citing Restatement, Contracts 2d, § 195); *see Charter Oak Fire Ins. Co. v. Trio Realty Company*, 2002 WL 123506 1, *4 (S.D.N.Y 2002)(under New York state law "gross negligence, used interchangeably with willful negligence" has been defined as "the degree of neglect arising where there is a reckless indifference to the safety of human life or an intentional failure to perform a manifest duty to the public, in the performance of which the public and the party injured have interests."); *see also* Michael B. de Leeuw, Brian J. Howard, *"What is a Willful Breach of Contract?"* New York Law Journal (April 3, 2006)(describing exculpatory clauses as willful/malicious breach exceptions that courts preclude by operation of law). Though the New York Pattern Jury Instruction–Civil 2:10 provides for negligence separately, gross negligence and willful

misconduct are lumped together into the same instruction 2:10A "Common Law Standard of Care–Gross Negligence or Wilful Misconduct."[3]

The Court finds that National Union's Complaint's alleged conduct evinces a reckless disregard for the rights of others, and perhaps even smacks of intentional wrongdoing–which is precisely what New York state law considers, in this context, to be gross negligence. *See Colnaghi, U.S.A., Ltd. V. Jewelers Protection Services, Ltd.*, 81. N.Y.2d 821, 823-824 (N.Y. 1993)(gross negligence is "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing)(citing *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 554 (N.Y. 1992). A district court found similarly that a defendant who dried oil-soaked fabric in a commercial dryer, and knowingly installed a room partition that blocked the sprinkler system thereby causing a fire and approximately $600,000 in property damage, had committed no more than gross negligence. *See Indian Harbor Ins. Co. v. Dorit Baxter Skin Care, Inc.*, 430 F. Supp. 2d 183, 185 (S.D.N.Y. 2006). The Court concluded that the waiver of subrogation contained in the lease barred the subrogee's claims against the defendant for negligence, gross negligence and breach of contract. *Id.* at 194. Here, National Union's claim of willful breach of contract for Jenbacher personnel's disabling of security equipment is no more than a claim of gross negligence, which the highest court in New York has ruled is barred by a valid waiver of subrogation. *See Abacus Fed. Sav. Bank*, 2012 N.Y. LEXIS

---

[3] PJI 2:10A. Common Law Standard of Care–Gross Negligence or Wilful Misconduct: In this case, you must decide whether defendant was guilty of (gross negligence, wilful misconduct). Negligence is a failure to exercise ordinary care. (Gross Negligence, wilful misconduct) is more than the failure to exercise reasonable care.([Use whichever of the following definitions applies])
[Gross negligence means a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights and safety of others.]
[Wilful misconduct occurs when a person intentionally acts or fails to act knowing that (his, her) conduct will probably result in injury or damage. Wilful misconduct also occurs when a person acts in so reckless a manner or fails to act in circumstances where an act is clearly required, so as to indicate disregard for the consequence of (his, her) action or inaction.]

at *9; *Board of Educ., Union Free School Dist. No. 3, Town of Brookhaven v Valden Assoc.*, 46 N.Y.2d 653 (1979) (subrogee's claim barred because contract required plaintiffs to obtain insurance to cover 100% of any losses incurred on plaintiff's property and expressly waived all rights to seek damages). The waiver of subrogation in the O&M Agreement allocated the risk of fire to Biogas' insurer and therefore did not leave an injured party uncompensated. The Court believes New York state public policy would not be offended by such a contractual arrangement. Consequently, National Union has failed to state a claim upon which relief can be granted. Count I is dismissed.

## IV. CONCLUSION

In conclusion, National Union's Complaint is dismissed for failure to state a claim upon which relief can be granted under New York state law.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 13, 2012